**Reversed and Remanded and Opinion filed December 4, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00170-CV

## KEN HOAGLAND, Appellant

### V.

## BILL BUTCHER, KARI BUTCHER, BUTCHER & BUTCHER, AND OCTV PARTNERS, LLC, Appellees

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2010-58144**

## O P I N I O N

In one issue, appellant Ken Hoagland challenges the trial court's order granting the special appearance filed by appellees Bill Butcher, Kari Butcher, and Butcher & Butcher.[1] This is the second appeal in this case. In the first appeal, the trial court granted the appellees' special appearance and dismissed the case. We

---

[1] The fourth defendant, OCTV Partners, LLC, is not a party to this appeal.

concluded appellees did not negate every basis for jurisdiction, reversed the trial court's order dismissing the case, and remanded the case for further proceedings. *Hoagland v. Butcher*, 396 S.W. 3d 182 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Concluding the trial court may exercise personal jurisdiction over Hoagland's claims, we again reverse and remand.

## *Background*

Hoagland is a resident of Harris County, Texas, and board member of Americans for Fair Taxation (AFFT), a non-profit organization based in Houston, Texas. Hoagland is a proponent of the FairTax Campaign, whose purpose is to persuade the United States Congress to pass a bill replacing the current federal tax structure with a consumption tax.

California residents William and Kari Butcher, on behalf of Butcher & Butcher, a general partnership with its principal place of business in California, traveled to Houston on three occasions to meet with the board of directors of AFFT. During the first meeting, the Butchers made a presentation to solicit business from AFFT. During the subsequent meetings, the Butchers provided updates on the services provided, including fundraising, consulting, direct mail, and other media related services meant to promote the FairTax Campaign. Hoagland attended the Houston presentations as a member of the AFFT board.

OCTV Partners LLC, a California Corporation, was formed after the first Houston meeting to provide certain advertising and fundraising services agreed upon between AFFT and Butcher & Butcher. William Butcher served as a member of OCTV, and Hoagland was hired as a manager. Hoagland remained in Houston and had the authority to bind OCTV to agreements made in Houston or elsewhere. Conditions of employment and corporate bylaws were laid out in the OCTV

2

Operating Agreement.[2]

Pursuant to the Operating Agreement, Hoagland was to receive as compensation a percentage of available cash, as defined in the agreement. Subsequently, Hoagland agreed to a modification of the terms of the Operating Agreement to receive instead a flat monthly fee. The advertising campaign was successful, and an infomercial starring Hoagland was posted online.

Hoagland contends that representations made by the Butchers at the AFFT presentations in Houston led him to join OCTV as a manager. Furthermore, Hoagland contends that William Butcher made misrepresentations via telephone that the infomercial would result in limited success, which induced Hoagland to alter his contract to receive the flat monthly fee. In principle, the flat fee would have provided Hoagland with less compensation, although in practice, Hoagland allegedly has received no compensation at all. Hoagland sued appellees for breach of the Operating Agreement, quantum meruit, fraudulent inducement to enter and subsequently to modify the Operating Agreement, fraud, and for an injunction to prevent appellees from "appropriating the name, likeness and proprietary data belonging to" Hoagland.

This is the second appeal of this special appearance. In the first instance, the trial court granted the special appearance and dismissed for lack of jurisdiction. We reversed, finding that appellees failed to negate all alleged grounds of jurisdiction. *Id.* at 196. On remand, appellees filed an amended motion for special appearance. The trial court granted the amended motion and again dismissed the case for lack of jurisdiction. Hoagland's appeal of that dismissal is currently before us.

---

[2] OCTV and AFFT also entered into an agreement to allow OCTV to promote the FairTax Campaign through infomercials and other types of media. The relationship between OCTV and AFFT deteriorated under allegations of OCTV misconduct. OCTV and AFFT are arbitrating—or have arbitrated—their dispute.

*Discussion*

In one issue, Hoagland contends (1) appellees were not permitted to file an amended motion for special appearance following appeal; (2) the law of the case dictates a holding that the trial court has personal jurisdiction over Hoagland's claims; and (3) the trial court has jurisdiction over Hoagland's claims. Concluding the trial court has jurisdiction, we reverse and remand the trial court's order granting the special appearance and dismissing the case for want of jurisdiction.

## I.     Amending Special Appearance After Appeal

Hoagland argues appellees were not permitted to file an amended motion for special appearance following an appeal, asserting that to allow such an amendment would raise concerns of judicial economy because nothing would prevent indefinite amendments and subsequent appeals. We need not reach this issue of first impression because we conclude, in any event, that the trial court has personal jurisdiction over appellees' claims, as discussed below.[3]

## II.    Law of the Case

Hoagland also argues the law of the case dictates a holding that the trial court has jurisdiction over his claims because, as he contends, we reached that conclusion in our previous opinion. Under the "law of the case" doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986*); Jacobs*

---

[3] We note that Texas Rule of Civil Procedure 120a(1) allows the amendment of a special appearance to cure defects and courts have held the rule does not limit the timing of the amendment, as long as it is filed prior to a general appearance. *See, e.g., Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998); *Moore v. Pulmosan Safety Equip. Corp.*, 278 S.W.3d 27, 33-34 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Moreover, the supreme court has held that filing a defective affidavit in support of a special appearance, such as happened in the first appeal here, does not waive the special appearance. *See Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 307-08 (Tex. 2004). No courts, however, have addressed whether a special appearance may be amended following appeal.

4

*v. Jacobs*, Nos. 14-13-00442-CV, 14-13-00462-CV, 2014 WL 4923263, at *2 (Tex. App.—Houston [14th Dist.] Oct. 2, 2014, no pet. h.). The doctrine is based on public policy and is intended to achieve uniformity of decision, as well as judicial economy and efficiency. *Hudson*, 711 S.W.2d at 630; *Jacobs*, 2014 WL 4923263, at *2. The doctrine, which is aimed at putting an end to litigation, applies to questions of law but not fact. *Hudson*, 711 S.W.2d at 630; *Jacobs*, 2014 WL 4923263, at *2. Application of this doctrine is flexible and must be left to the discretion of the court and determined according to the particular circumstances of the case. *Jacobs*, 2014 WL 4923263, at *2.

The doctrine does not necessarily apply when the issues or facts presented on successive appeal have substantially changed. *Hudson*, 711 S.W.2d at 630; *Jacobs*, 2014 WL 4923263, at *2. Thus, when in the second trial or proceeding, the parties amend their pleadings, it may be that the issues or facts have sufficiently changed so that the law of the case no longer applies. *Hudson*, 711 S.W.2d at 630.

Although it often requires the court to make findings of fact, determining personal jurisdiction is nevertheless a question of law. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-91 (Tex. 2005). Therefore, unless the facts have sufficiently changed, our holdings in the previous appeal regarding personal jurisdiction are the law of this case. *See Hudson*, 711 S.W.2d at 630. In the first appeal we did not reach a conclusion as to whether personal jurisdiction existed. *Hoagland,* 396 S.W. at 201 (Christopher, J., dissenting on denial of reh'g). Rather, we held that appellees' affidavits were conclusory and thus insufficient to negate all grounds of personal jurisdiction. *Id.* at 193, 196.

In this appeal, as discussed, we conclude the trial court has jurisdiction over Hoagland's claims. This will require an examination of each claim or group of claims arising from the same contacts with the forum state. *See Moncrief Oil Int'l*

5

*Inc. v. OAO Gazprom,* 414 S.W.3d 142, 150-51 (Tex. 2013). As we did not previously reach this issue, the law of the case does not apply. *See Hudson*, 711 S.W.2d at 630. However, because we held in the first appeal that Hoagland pleaded sufficient jurisdictional facts and his petition has not been amended, our holding as to that issue remains the law of the case. *Hoagland*, 396 S.W.3d at 191. We now examine whether the trial court has personal jurisdiction over Hoagland's claims.

### III.  Personal Jurisdiction

Texas courts may exercise personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). A plaintiff bears the initial burden of alleging facts sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Moncrief*, 414 S.W.3d at 149. The Texas long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(2). We have already held that Hoagland pleaded significant facts to bring appellees within the terms of the Texas long-arm statute by committing torts in Texas. *Hoagland*, 396 S.W.3d at 191. Hoagland has not since amended his petition. Thus, he met his initial burden of alleging a cause of action sufficient to confer jurisdiction under the long arm statute. *See Moncrief*, 414 S.W.3d at 149.

When the initial burden is met, the burden shifts to the nonresident defendant to negate all potential bases for personal jurisdiction the plaintiff pleaded. *Id*. Hoagland alleges that appellees committed torts—fraud and fraudulent inducement—in Texas. Thus, appellees were required to negate these bases for personal jurisdiction. *See id*. at 149-50. A nonresident defendant may negate

6

jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Const., Inc.,* 301 S.W.3d 653, 659 (Tex. 2010). Factually, the defendant may present evidence that it has insufficient contacts with Texas, effectively disproving the plaintiff's allegations; the plaintiff may respond with his own evidence that affirms his allegations. *Id.* Legally, the defendant may show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction.[4] *Id.*

A trial court's assertion of personal jurisdiction over a defendant comports with due process when the nonresident defendant has minimum contacts with the forum state and asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 150. A defendant establishes minimum contacts with a forum when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.*

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id.* Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state. *Id.* Here, Hoagland's asserted basis is specific jurisdiction, which focuses on the relationship between the defendants, Texas, and the litigation to determine whether the claims arise from the Texas contacts. *Id.*

When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are

---

[4] In the first appeal, we concluded that appellees did not present sufficient evidence to negate personal jurisdiction, in part because their affidavits in support of the special appearance were deficient. *Hoagland*, 396 S.W.3d at 192-93. The amended special appearance is supported by affidavits that contain substantially more information than those supporting the original special appearance.

7

supported by evidence. *Id*. The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Id*. However, if a factual dispute exists, we are called upon to review the trial court's resolution of the factual dispute as well. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

The trial court's inferred factual findings are not conclusive and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *Bryan v. Gordon*, 384 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When examining a legal sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to find the fact under review. *Id*. The factfinder is the sole judge of witnesses' credibility and the weight to give their testimony. *See id*. at 819.

In a factual sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407.

We consider three factors to determine whether a nonresident purposely availed himself of the privilege of conducting activities in Texas: (1) the defendant's contacts with the forum, not the unilateral activity of another party;

8

(2) whether the contacts were purposeful rather than random, isolated or fortuitous; and (3) whether the defendant has sought some benefit, advantage, or profit by availing himself of the jurisdiction. *Moncrief*, 414 S.W.3d at 151. This analyzes the quality and nature of the contacts, not the quantity. *Id*. Accordingly, a single contact may be sufficient to establish specific jurisdiction. *Id*. At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that he could reasonably anticipate being haled into court there. *Id*. at 152.

Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *Id.* at 150. But we need not do so if all claims arise from the same forum contacts. *Id*. at 150-51. Hoagland asserts that his claims all arose from the following contacts—appellees' presentations to AFFT in Texas, using Hoagland as OCTV's manager inside and outside Texas, setting up an escrow account in Texas, and making representations to Hoagland via telephone and email while Hoagland was in Texas. Appellees argued in their special appearance that the only contact in support of Hoagland's fraud and fraudulent inducement claims relating to the modification of the Operating Agreement was a telephone call between Hoagland and William in which William purportedly asked Hoagland to modify the compensation to which he was entitled under the agreement.[5] Appellees did not otherwise argue that Hoagland's claims arose from different purported contacts with Texas. In any event, Hoagland presented evidence that appellees' representations at the meetings in Texas induced him to enter into the Operating Agreement, and Hoagland's claims revolve around torts and breaches of contract associated with that agreement. We conclude that Hoagland's claims all arose from

---

[5] Appellees asserted, "[Hoagland] admits that this alleged 'fraud' occurred via telephone. All communications with [Hoagland], if any, would have occurred via telephone and/or email from Bill Butcher's offices in California."

9

the same forum contacts. Accordingly, we need not address each claim independently. *See id*. at 150-51.

### A. Meetings in Texas Were Purposeful Contacts with the Forum by Appellees, Not Unilateral Activity of Third Parties

A nonresident defendant's contacts with the forum are not unilateral or random and fortuitous when the defendant has created continuing obligations between himself and residents of the forum because the defendant has availed himself of the privilege of conducting business there and thus is entitled to the benefits and protections of the forum's laws. *Id*. at 151 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, appellees' contacts with Texas in the form of conducting presentations in the state to obtain business and to report their business activities were neither unilateral activities of Hoagland or AFFT nor random and fortuitous. *See id*. at 153. Appellees agreed to attend the Texas meetings. *See id*. Hoagland presented evidence that appellees made representations during those meetings with regard to their qualifications that form the basis of Hoagland's claims, i.e., that because of those representations, Hoagland entered into a business relationship with appellees, entered into the Operating Agreement and agreed to modify it, and agreed to take part in infomercials and other media events promoting the FairTax Campaign.[6] *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886-87 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding face-to-face meeting in Texas during which defendant made representations to plaintiff were purposeful contacts that formed "a substantial portion of the core of

---

[6] Hoagland attested:

> In order to gain the confidence of myself and others, [appellees] misrepresented their abilities and financial condition such that it was believed they would bring enormous skill, expertise, and personal and donated monies to the effort. These misrepresentations were made to me in my presence while each of the [appellees] was physically located in Houston, Texas.

10

the litigation").

Moreover, appellees' contacts were purposeful and substantial because their activity was aimed at getting—and keeping—extensive business from AFFT in Texas. *See Moncrief*, 414 S.W.3d at 153. Appellees argue that any representations made in Texas were directed towards AFFT and not Hoagland.[7] Appellees' subjective intent in attending the meetings, however, is irrelevant. *See id*. at 154. At the jurisdiction phase, we examine business contacts, not what the parties thought or intended, which is the role of the factfinder in assessing the merits of the claims alleged. *See id*.

Here, appellees intended to and did come to Texas for two meetings, at which they made representations regarding their qualifications. *See id*. Although appellees argue they "have never travelled to Texas to confer with [Hoagland] with respect to any business transaction involving [Hoagland] in his individual capacity," they do not dispute they came to Houston, attended the meetings at which Hoagland was present, or spoke about their qualifications. As we concluded in our previous opinion, attending the AFFT board meetings was purposeful and not random or fortuitous because appellees intended to obtain business and keep an ongoing business relationship with AFFT. *Hoagland*, 396 S.W.3d at 194.

## B. Appellees Sought Benefits, Advantages, and Profits by Availing Themselves of the Jurisdiction

Appellees benefitted from doing business in Texas. They attended three Texas meetings with a Texas corporation and entered into a business relationship with that corporation, out of which sprang appellees' business relationship with

---

[7] We note appellees have not addressed the questions we asked in the first appeal—what statements were made in the presentations, whether they were made only as part of the presentations to a group, or whether appellees had any conversations with Hoagland. *Hoagland*, 396 S.W.3d at 193.

Hoagland. *See Moncrief*, 414 S.W.3d at 154. Far from seeking to avoid Texas, appellees sought out Texas and the protections of its laws. *See id*.

Appellees make a number of arguments related to the merits of Hoagland's claims, i.e., that appellees attended the meetings only as representatives of Butcher & Butcher, did not make fraudulent representations to Hoagland in his personal capacity, and did not induce Hoagland either to enter into the contract with OCTV or subsequently to agree to modify his compensation. However, we may not consider the merits of Hoagland's claims at the jurisdiction stage. *See id*. at 156 n.15. We look merely to appellees' business contacts with the forum to determine whether jurisdiction exists. *See id*. at 154.

The evidence demonstrates that appellees' contacts in Houston were not the result of unilateral activity by a third party; the contacts were neither random nor fortuitous; and appellees sought the privilege of doing business within the state of Texas. Hoagland presented evidence that the meetings in Houston led to the formation of the OCTV contract at the center of this dispute, an assertion appellees did not refute. Accordingly, the evidence does not support the trial court's implied findings underpinning its conclusion that appellees did not purposely avail themselves of the privilege of conducting activities in Texas. *See id*. at 150 (noting trial court's implied findings must be supported by evidence).

### C. Substantial Connection between Contacts with Texas and Operative Facts of the Litigation

For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there also must be a substantial connection between those contacts and the operative facts of the litigation. *Id*. at 156. Appellees argue that the meetings in Texas do not relate to Hoagland's claims. We disagree.

Hoagland claims he was induced by appellees' representations about their

12

qualifications at the board meetings in Houston to enter into the OCTV Operating Agreement and work with OCTV. His fraudulent inducement and fraud claims thus are based in large part on what appellees communicated or failed to communicate at those meetings.[8] *See Hoagland*, 396 S.W.3d at 195. The operative facts for these claims are events that occurred in Houston. *See id.*; *see also Max Protetch, Inc.*, 340 S.W.3d at 888 (holding plaintiff's claims arose out of communications in Houston forming "the core of the litigation").

Hoagland's breach of contract and quantum meruit claims relate to breaches of the Operating Agreement that Hoagland alleges he was induced to enter into by appellees' representations at those meetings. *See Hoagland*, 396 S.W.3d at 195. Appellees assert they are not parties to the Operating Agreement or to its subsequent modification. We note that William signed the Operating Agreement, but Kari did not.[9] However, the argument that appellees are not parties to the Operating Agreement is a merits issue that, even if successful, would not deprive the court of jurisdiction. *See, e.g., Dresser-Rand Group, Inc. v. Centauro Capital, S.L.U.*, No. 14-13-00444-CV, 2014 WL 4851893, at *6 (Tex. App.—Houston [14th Dist.] Sept. 25, 2014, no. pet. h.) ("Ultimate liability in tort is not a jurisdictional fact."); *Cain v. Progressive Cnty. Mut. Ins. Co.*, No. 14-12-00954-CV, 2014 WL 4638923, at *2 n.1 (Tex. App.—Houston [14th Dist.] Sept. 18, 2014, no. pet. h.) (noting defendant's argument that plaintiff lacked standing to sue because plaintiff was not a party to the subject contract was a merits argument and

---

[8] Hoagland also alleges he agreed to modify the Operating Agreement as to his compensation due to an alleged misrepresentation made to him by William Butcher via telephone. This modification would not have been contemplated had Hoagland not entered into the Operating Agreement, which he alleges he did as a result of the representations made by appellees at the Houston meetings.

[9] William argues that he signed the Operating Agreement in his representative capacity, although that is not apparent from his signature block.

did not deprive court of jurisdiction); *Saba Zi Exploration, L.P. v. Vaughn*, No. 14-13-00325-CV, 2014 WL 4552113, at \*2 n.10 (Tex. App.—Houston [14th Dist.] Sept. 16, 2014, no. pet. h.) (listing elements of breach of contract cause of action, which include the existence of a valid contract). Taking Hoagland's allegations as true, which we must do at the special appearance stage, we analyze the jurisdictional issues as if appellees were all parties to the Operating Agreement.[10] *See Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 284 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("We take the allegations in the petition as true at the special appearance stage.").

Standing alone, entering a contract with a Texas resident does not necessarily establish minimum contacts sufficient to support personal jurisdiction. *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 281 (Tex. App.—Houston [14th Dist.] 2009, no pet.). But it may do so when considered against a backdrop of "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 478–79). The contract's place of performance is an important consideration. *Id.* It is reasonable to subject a nonresident defendant to personal jurisdiction in Texas in connection with litigation arising from a contract specifically designed to benefit from the skills of a Texas resident who performs contractual obligations in Texas. *Id.*

Here, the Operating Agreement contemplates an ongoing business relationship with a Texas resident to be performed at least in part in Texas. *See id.*

---

[10] Hoagland's breach of contract allegation presupposes the existence of a valid contract, as an element of breach of contract. *See Saba Zi Exploration, L.P.*, 2014 WL 4552113, at \*2 n.10 (listing elements). We further note that Hoagland alleges appellees entered into an oral agreement with him regarding his compensation, which they allegedly breached. We presume that Hoagland's references to the oral agreement point to the modification of the Operating Agreement.

at 282. Hoagland attested, "[e]ach defendant realized that they [sic] were empowering me, on behalf of OCTV . . . to do business in Texas and to cause OCTV . . . to purposely avail itself of the rights and remedies of the State of Texas." Moreover, appellees traveled to Houston on at least three occasions in furtherance of the parties' business relationship. These facts demonstrate that the contractual dispute has a substantial connection with Texas.[11] *See id*. at 283.

Relatedly, appellees' business relationship with Hoagland gave rise to his participation in the infomercials and other media events that display his likeness. Hoagland would not have sought an injunction preventing appellees' use of those materials had the parties not been in a business relationship that Hoagland was purportedly induced to enter into based on the representations made by appellees in Houston.

We conclude there is a substantial connection between appellees' contacts with Texas and the operative facts of the litigation and thus the pleadings and evidence do not support the trial court's implied findings in support of its conclusion that it lacked jurisdiction over Hoagland's claims.[12] *See Moncrief*, 414 S.W.3d at 150; *Max Protetch, Inc.*, 340 S.W.3d at 888. We next must determine whether exercise of personal jurisdiction over the nonresident offends traditional notions of fair play and substantial justice. *See Moncrief*, 414 S.W.3d at 154.

---

[11] We note that in *Moncrief*, the supreme court clarified that when a plaintiff brings multiple claims, some of the claims may have a substantial connection with Texas while some of the claims may not. "But for causation" is not sufficient to establish a substantial connection. *Moncrief*, 414 S.W.3d at 157. In light of *Moncrief*, it is unclear to what extent a plaintiff's performance under a contract is relevant to the minimum contacts inquiry and how closely a court, sua sponte, must parse separate causes of action.

[12] We conclude that the meetings in Texas established personal jurisdiction over appellees. Thus, we need not address whether the other purported contacts with Texas gave rise to personal jurisdiction. *See Moncrief,* 414 S.W.3d at 151 (noting specific jurisdiction may arise "from even a single act").

15

**D. Exercise of Jurisdiction Consistent with Traditional Notions of Fair Play and Substantial Justice**

In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Id.* at 155. When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Id.* at 154-55. The defendant bears the burden of presenting a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Dodd v. Savino*, 426 S.W.3d 275, 287 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Appellees do not present a compelling case that the trial court's exercise of jurisdiction in this case would be unreasonable. Without any supporting authority or evidence, appellees argue most of the witnesses and evidence are in California, California law controls the agreements at issue, and it would be a burden on appellees to travel to Texas to litigate the case. Appellees have not shown how the exercise of jurisdiction in Texas would impose an unreasonable burden on them, whereas Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly disputes in which the defendant allegedly committed torts in whole or in part in Texas. *Hoagland*, 396 S.W.3d at 196. Distance alone will not ordinarily defeat jurisdiction. *Moncrief*, 414 S.W.3d at 155.

Given appellees' history of attending meetings in Texas, the burden of litigating here is not so great as to defeat jurisdiction. *See id*. This burden is mitigated by Hoagland's interest in obtaining convenient and effective relief,

16

which is particularly heightened because this case has already been appealed twice without a resolution of the merits of Hoagland's claims. *See id*. Additionally, because the trial court already is familiar with this case, it promotes judicial economy to litigate Hoagland's claims in Texas. *See id*. Finally, no other jurisdiction has as significant an interest as Texas does in resolving claims for torts committed in Texas against a Texas resident. *See id*. at 156.

On balance, we conclude that the exercise of jurisdiction comports with the constitutional requirements of due process. Accordingly, the trial court erred in granting appellees' special appearance and dismissing the case.

We reverse the trial court's order and remand for proceedings consistent with this opinion.


/s/    Martha Hill Jamison
        Justice


Panel consists of Justices Boyce, Jamison, and Donovan.