**REVERSED and RENDERED and Opinion Filed November 22, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-01126-CV

## CONCORD ENERGY, LLC, Appellant
## V.
## VR4-GRIZZLY, LP, Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-10333**

## MEMORANDUM OPINION
Before Chief Justice Burns,[1] Justice Nowell, and Justice Smith
Opinion by Justice Smith

Appellant Concord Energy, LLC appeals the trial court's denial of its special

appearance challenging the trial court's personal jurisdiction over Concord.[2]

Because we conclude that appellee VR4-Grizzly, LP's claims against Concord do

not arise from or relate to Concord's contacts with Texas and, therefore, the trial

---

[1] The Honorable Leslie Osborne participated in the submission of this case; however, she did not participate in issuance of this memorandum opinion due to her resignation on October 24, 2022. The Honorable Robert Burns has substituted for Justice Osborne in this cause. *See* TEX. R. APP. P. 41.1(b)(1). Chief Justice Burns has reviewed the briefs and the record before the Court.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (permitting an appeal from an interlocutory order that grants or denies a special appearance under TEX. R. CIV. P. 120a, which allows a defendant to specially appear and object to the court's personal jurisdiction over the defendant).

court did not have personal jurisdiction over Concord, we reverse and render judgment dismissing VR4's claims against Concord.

## Personal Jurisdiction

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). Often, however, a trial court must resolve questions of fact before deciding the question of jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law in conjunction with its special appearance ruling such as in the case here,[3] all facts necessary to support the judgment that are supported by the evidence are implied. *Id.* at 795. These implied findings may be challenged for legal and factual sufficiency when the appellate record includes the reporter's and clerk's records. *Id.* If the relevant facts are undisputed, the appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish personal jurisdiction. *Old Republic*, 549 S.W.3d at 558.

Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the

---

[3] Although appellants filed a request for findings of fact and conclusions of law, the record does not contain a notice of past due findings or reflect that the trial court made findings of fact and conclusions of law.

exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute is satisfied when a nonresident defendant does business in Texas such as when the nonresident defendant "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1); *Moki Mac*, 221 S.W.3d at 574. The exercise of personal jurisdiction over such nonresident defendant is constitutional when (1) the nonresident defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795.

A nonresident defendant's contacts with the forum state can give rise to general or specific jurisdiction. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). General jurisdiction is established when the defendant has continuous and systematic contacts with the forum, rendering it essentially at home in the forum state, regardless of whether the defendant's alleged liability arises from those contacts. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to the defendant's activity conducted within the forum state. *BMC Software*, 83 S.W.3d at 796.

The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff has met the initial burden of pleading sufficient jurisdictional allegations, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* If the defendant presents evidence in its special appearance disproving the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to establish the court has personal jurisdiction. *Id.* at 659. The plaintiff should amend the petition if it lacks sufficient allegations to bring the defendant under the long-arm statute or if, in the special appearance response, the plaintiff presents evidence that supports a different basis for jurisdiction. *Id.* at 659, 659 n.6. Raising jurisdictional allegations for the first time in a response to the special appearance is not sufficient. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 128–29 (Tex. App.—Dallas 2021, no pet.) (en banc); *see also Kelly*, 301 S.W.3d at 658 n.4 ("additional evidence merely supports or undermines the allegations in the pleadings").

## Issues Raised

Concord argues that the trial court erred in denying its special appearance because (a) VR4 did not allege specific grounds for personal jurisdiction prior to the

–4–

special appearance hearing; (b) to the extent VR4 did sufficiently allege jurisdiction, Concord negated VR4's alleged grounds for personal jurisdiction; (c) the trial court should not have considered VR4's conclusory declaration, parol evidence, VR4's post-hearing petition, and post-hearing amended declaration when determining whether it had personal jurisdiction; and (d) even when considering VR4's efforts to reframe its claims, the evidence still negated jurisdiction.

## Jurisdictional Allegations[4]

VR4 alleged in its original petition that Concord was a foreign limited liability company existing under the laws of Colorado with its principal place of business in Colorado. VR4 further alleged that Concord was authorized to do business in Texas and could be served through its agent of process in Dallas, Texas. VR4 is a Texas limited partnership doing business in Dallas.

VR4 claimed it purchased a producing interest in a number of gas wells in Oklahoma and Texas from Grizzly Operating, LLC. According to VR4, Concord was VR4's gas marketer from the time it purchased its interest in early 2021 until March 2021, when it ended its relationship with Concord. Concord had also previously been the gas marketer for Grizzly, which was formerly Vanguard Operating, LLC.

---

[4] The underlying facts and procedural history are well-known to the parties; therefore, we limit our discussion of the record to those facts necessary to resolve Concord's appeal. *See* TEX. R. APP. P. 47.1.

–5–

The crux of VR4's suit against Concord is that it failed to pay money owed to VR4 for gas delivered from VR4's Oklahoma wells to Concord[5] in February 2021, during the severe winter storm that caused a spike in the price of gas. The discrepancy for the amount owed under the marketing agreement was due to the third-party gatherer's failure to change its measurement system to individually account for the amount of gas produced by VR4's wells and the amount produced by another company's wells in the same Oklahoma field. Previously, Grizzly owned the producing interest in these wells and, thus, the gatherer attributed all gas produced to Grizzly. Since the sale of Grizzly's interest, the gatherer had not yet changed its system to reflect that some wells were now owned by VR4 and some were owned by the other company. A significant volume of the other company's gas production was knocked offline during the winter storm; VR4's wells remained fully operational and covered the nominations allocated to both companies. VR4 claimed that, in an attempt to resolve the dispute, the parties agreed via email to reallocate the proceeds between VR4 and the other owner, thus agreeing that Concord would pay VR4 more. VR4 claimed that Concord failed to pay it $488,321.51 of the agreed upon amount.

When Concord allegedly failed to pay VR4 market price for the gas it actually delivered from its Oklahoma wells, VR4 brought causes of action for breach of

---

[5] VR4's Oklahoma wells fed gas into a receipt point in Oklahoma, owned by the gatherer. The gas was then transported to a processing plant in Oklahoma, processed, and delivered to Concord via pipeline.

contract, money had and received, and quantum meruit.  The Base Contract for Sale and Purchase of Natural Gas attached to VR4's original petition, and referred to in its petition as the marketing agreement, provides Colorado as the choice of law.  It is undated and unsigned.

In its special appearance, Concord asserted it was not domiciled in Texas and VR4 failed to plead facts to bring Concord within the reach of the Texas long-arm statute.  Concord attached a signed copy of the Base Contract that VR4 referenced in its original petition, which was dated January 25, 2021.  Concord asserted that the contract was not intended to be performed, nor was it performed, in whole or in part, in Texas.  Concord further asserted that VR4 made no allegation that Concord committed any act in Texas leading to any of the claims pleaded.  It contended that the alleged actions occurred outside of Texas, if at all.  Concord thus argued that any jurisdictional allegations were legally insufficient to establish that the trial court had personal jurisdiction over Concord.

VR4 responded and filed a first amended petition before the hearing.  VR4's first amended petition added the following facts:

> Pursuant to the assignment from Grizzly to Plaintiff, Plaintiff acquired Grizzly's rights under the "Base Contract for Sale and Purchase of Natural Gas" (the "Marketing Agreement"), between Grizzly and Concord, a true and correct copy of which is attached hereto as "Exhibit A."  In this role, Concord found buyers for gas produced from Grizzly's wells in Texas, Oklahoma, and elsewhere, purchased Grizzly's gas in Texas, Oklahoma, and elsewhere, and immediately resold it to buyers in Texas, Oklahoma, and elsewhere for a markup.  When Plaintiff

–7–

acquired Grizzly's wells in Oklahoma and later, Texas, Concord did the same for Plaintiff.

The Base Contract attached to VR4's first amended petition was between VR4's predecessor, Vanguard, and Concord, and contained a Texas choice of law provision. It was dated September 29, 2016. VR4 did not allude to why it was now, in its amended petition, relying on the 2016 contract between Concord and Vanguard as the governing agreement when VR4 and Concord had signed a new Base Contract in January 2021, which VR4 had attached to its original petition.

At the special appearance hearing, the trial court noted its concern with VR4's lack of jurisdictional allegations in its pleadings: "One of the first things I noticed is that you guys made no allegations in your petition with regard to jurisdiction and venue. What I was looking for in that amended petition was exactly that, which you still haven't addressed. Why haven't you addressed that in your petitions?" VR4's counsel responded that he believed the jurisdictional allegations were covered by the fact section of the petition but that VR4 would be happy to amend if the court believed it was necessary. Concord's counsel argued that it apprised VR4 of the jurisdictional defects in its pleading by raising such issues in the special appearance. Concord further argued that, although VR4 amended its petition, it failed to address the jurisdictional deficiencies and, thus, Concord urged the trial court to grant its special appearance based on VR4's failure to meet its initial pleading burden.

After the hearing but before the trial court denied Concord's special appearance, VR4 filed a second amended petition. VR4 alleged that Concord entered into a contract with VR4's predecessor, a Texas company, which was to be performed, in part, in Texas and that Concord maintained continuous and systematic contacts with Texas by sending repeated gas nomination agreements to VR4 in Texas and by buying and selling gas in Texas. Concord responded that the trial court should not consider VR4's second amended petition or amended declaration and moved to strike. The trial court did not rule on Concord's motion to strike.

On appeal, Concord argues that VR4 did not allege specific grounds for personal jurisdiction prior to the special appearance hearing. Specifically, Concord asserts that VR4's original and first amended petition contained no jurisdictional allegations except that Concord was authorized to do business in Texas, that any allegations made by VR4 in its special appearance response did not cure its pleading deficiencies, and that VR4's second amended petition cannot be considered because it was filed four days after the special appearance hearing.

We agree that we cannot consider VR4's second amended petition filed after the special appearance hearing and, therefore, our review is limited to whether VR4 met its jurisdictional pleading burden in its first amended petition. *See Rose Trading, LLC v. Wei*, No. 05-21-00232-CV, 2021 WL 5754810, at *2 (Tex. App.—Dallas Dec. 3, 2021, pet. pending) (mem. op.) ("An amended petition filed without leave after a special appearance hearing is untimely, and it may not be considered

–9–

when ruling on the special appearance."); *Guam Indus. Servs., Inc. v. Dresser-Rand Co.*, 514 S.W.3d 828, 837 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("It is well settled that in reviewing a ruling on a special appearance, we may review only those pleadings on file at the time of the special appearance hearing and may not consider pleadings that were filed after the hearing.").

VR4 argues that it met its burden in its first amended petition. It contends that the fact section "clearly alleges various jurisdictional facts regarding Concord's activities in and contacts with Texas in connection with the parties' contractual relationship." Although pleading jurisdictional allegations in a "Jurisdiction" section would be the preferred practice and likely provide more clarity in a plaintiff's basis for jurisdiction, we agree that the allegations can be contained anywhere in the petition, including the fact section. *See Saidara*, 633 S.W.3d at 129–31. We further agree with VR4 that its first amended petition contains facts that bring Concord under the Texas long-arm statute. Specifically that Concord contracted with VR4, or entered into an agreement with VR4 by assignment, and that the agreement was to be performed in Texas in that Concord would find buyers for gas produced from VR4's wells in Texas and Oklahoma, purchase VR4's gas in Texas and Oklahoma, and immediately resell it to buyers in Texas and Oklahoma for a markup. Thus, VR4 met its initial pleading burden by alleging Concord contracted with VR4 and performed part of the contract in Texas. *See Moki Mac*, 221 S.W.3d at 574 (Texas long-arm statute is satisfied when nonresident defendant "contracts by mail or

otherwise with a Texas resident and either party is to perform the contract in whole or in part" in Texas) (quoting CIV. PRAC. & REM. § 17.042(1))). Therefore, we turn to whether Concord negated VR4's jurisdictional allegations.

## Concord Negated VR4's Jurisdictional Allegations

In addition to Concord's argument that VR4 failed to plead any jurisdictional facts to satisfy Texas's long-arm statute, Concord also argued that the trial court did not have specific jurisdiction because VR4's claims did not arise from or relate to Concord's purposeful activities in Texas. Concord denied that the 2016 contract governed and focused instead on the 2021 contract. According to Concord, although it did market gas produced in Texas, the claims asserted by VR4 arose from gas produced by wells in Oklahoma, not Texas.

Concord attached an affidavit from Samuel Rasure, Concord's Vice President of Producer Services, in which he testified that the gas at issue was produced, processed, and sold to Concord in Oklahoma. Concord performed the marketing agreement remotely from its headquarters in Denver, Colorado, and no one from Concord traveled to Texas in connection with VR4's Oklahoma wells. The only times Concord's performance under the January 25, 2021 contract touched Texas was when Concord exchanged emails with VR4 or sent electronic payments to VR4's bank in Texas. Concord did not provide marketing services for VR4's Texas-based wells until April 1, 2021.

We conclude that Concord successfully negated VR4's jurisdictional allegations by showing that at the time of the alleged breach it did not market gas in Texas for VR4 or from any Texas wells owned by VR4 and that VR4's claims against it concerned activities that occurred in Oklahoma or Colorado, not Texas.

### Minimum Contacts with Texas

We now turn to whether VR4 carried its burden in response to Concord's special appearance, other pleadings, affidavits, and evidence presented at the hearing to establish that the trial court did have specific jurisdiction over Concord as pleaded. *See* TEX. R. CIV. P. 120a(3) ("The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony.").

VR4 argued at the hearing that Concord admitted to minimum contacts. We disagree. At the hearing, Concord's counsel stated, "In this case we admit that we fall within the long-arm statute. The -- one of the standards itemized in the long-arm statute is contracting with [a] Texas resident. We have contracted with VR4 so we admit to that." Concord counsel then denied that exercising jurisdiction would comport with federal due process.

Falling under the long-arm statute is step one. Step two is determining whether the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees, which itself is broken into two questions: (1) whether the

–12–

nonresident defendant has established minimum contacts with the forum state, and (2) whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 795.

On appeal, VR4 summarizes its argument as follows:

Because Concord has admitted that it is subject to Texas' long arm statute in this case and does not argue the issue of fair play and substantial justice, the Court's jurisdictional analysis hinges on the minimum contacts test. Concord's minimum contacts with Texas are readily apparent: it entered into and performed services under a long term contract with a Texas gas producer, governed by Texas law, to purchase gas in Texas and sell it to buyers in Texas, which required frequent communications with that Texas company and procuring and delivering gas within Texas.

The problem with VR4's argument, both on appeal and in the trial court, is that it is lacking a critical component of the minimum contacts analysis: whether the claims alleged *arise from or relate to* Concord's contacts with Texas.

To exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with the forum state must be purposeful and the cause of action must arise from or relate to those contacts. *Moki Mac*, 221 S.W.3d at 575–76. We therefore focus on the relationship among the forum, the defendant, and the litigation. *Id.* To determine whether a defendant's contacts are purposeful, the court should consider only the defendant's contacts with the forum state, not the unilateral activity of a third party. *Id.* at 575. The contacts cannot be random, fortuitous, or attenuated, and the defendant must seek some benefit, advantage, or profit by availing himself of the

jurisdiction. *Id.* "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

For a cause of action to arise from or relate to the nonresident defendant's contacts, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. Plaintiff's claim does not have to arise "but for" the defendant's contacts, and the defendant's contacts are not required to be the "proximate cause" of liability. *TV Azteca*, 490 S.W.3d 53. "Instead, we consider what the claim is 'principally concerned with,' *Moncrief Oil [Int'l Inc. v. OAO Gazprom]*, 414 S.W.3d [142,] 157 [Tex. 2013], whether the contacts will be the 'focus of the trial' and 'consume most if not all of the litigation's attention,' and whether the contacts are 'related to the operative facts' of the claim, *Moki Mac*, 221 S.W.3d at 585." *Id.* "[I]f the actionable conduct occurs in Texas, we have never required that the lawsuit also arise directly from the nonresident defendant's additional conduct." *Luciano*, 625 S.W.3d at 18. "The

–14–

relevance of the additional conduct . . . is not to establish that those contacts constitute [defendant's] minimum contacts with Texas, but to establish that the actionable conduct in Texas itself constitutes minimum contacts" by showing that the defendant purposefully availed itself of Texas. *TV Azteca*, 490 S.W.3d at 54.

We must analyze jurisdictional contacts on a claim-by-claim basis, unless all claims arise from the same forum contacts. *Moncrief Oil*, 414 S.W.3d at 150. Here, VR4's claims against Concord for breach of contract, money had and received, and quantum meruit arise from Concord's marketing agreement with VR4 concerning VR4's Oklahoma wells. Thus, all claims arise from the same contacts and operative facts.

The parties dispute which contract controls: the 2021 contract between VR4 and Concord or the 2016 contract between Vanguard and Concord. VR4 argues that the 2016 contract controls because it is the marketing agreement that VR4 acquired in the assignment from Grizzly, formerly Vanguard, and that VR4 never intended to enter into a new contract in 2021. David Swain, who was personally involved in VR4's acquisition of Grizzly's Oklahoma wells in January 2021, stated the following in his declaration:

> It was my understanding that VR4-Grizzly was stepping into Grizzly Operating's shoes in its agreements with Concord and its other agreements, therefore I did not see these [2021] documents as necessary, nor did I believe they overrode the existing Transaction Confirmation and Base Contract for the Sale and Purchase of Natural Gas between Grizzly Operating and Concord. There was no negotiation

–15–

between Concord and VR4-Grizzly to arrive at a new agreement, and it was my understanding that the terms did not change.

Concord argues that the new contract controls because both parties signed it after the assignment and it contains an integration clause thereby merging any prior agreements, such as the 2016 agreement, into the successor 2021 agreement. Each party believes determining which contract controls is critical to the personal jurisdiction analysis. We disagree such a determination is in our scope of review. VR4's live pleading alleges that Concord breached the 2016 agreement and a 2021 email agreement; it no longer alleges Concord breached the 2021 marketing agreement. Whether the 2016 agreement controls, i.e. whether it is a valid and enforceable agreement between Concord and VR4, is a question regarding the merits of VR4's breach of contract claims against Concord. *See Hoagland v. Butcher*, 474 S.W.3d 802, 814, 814 n.10 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on remand). At this juncture, we must accept the plaintiff's allegations as true. *Id.* at 814–15.

Regardless of whether the 2016 agreement controls, the operative facts of VR4's claims involve the amount of gas produced by its Oklahoma wells, the amount measured by the gatherer in Oklahoma, and the amount due to VR4 as a result of the increase in market price and the other owner's wells being knocked offline in Oklahoma. VR4 maintains that it does not matter where the breach occurred because the breach is of a 2016 agreement that also governed Concord's

marketing of gas in Texas and, thus, Texas has jurisdiction over a breach of the agreement. But, under the assignment, VR4 acquired the marketing agreement as it related to the Oklahoma wells in which it purchased a producing interest, not all the other wells Grizzly owned across the nation. VR4 did not acquire the Texas wells and Concord did not begin marketing gas from VR4's Texas wells until April 2021, after the alleged breach.

VR4 relies on *Calyx Energy III, LLC v. Enerfin Resources I LP* to support its proposition that the trial court had personal jurisdiction over Concord even though the breach was regarding gas produced from wells in Oklahoma. *See* No. 14-19-00790-CV, 2021 WL 330195 (Tex. App.—Houston [14th Dist.] Feb. 2, 2021, no pet.) (mem. op.). *Calyx* is distinguishable for several reasons: (1) the "pre-existing, long-term business relationship" was between the parties in *Calyx*, whereas here the long-term relationship is between Concord and the previous owner of the wells, not Concord and VR4; (2) Concord did not approach VR4 about entering into an agreement but, instead, became VR4's marketer due to the assignment of some of Grizzly's Oklahoma wells to VR4; (3) Concord did not have an agent in Texas that managed its contract with VR4; (4) Concord did not have an officer in Texas that coordinated the management of its contract with VR4; and (5) the agreement between VR4 and Concord was not largely performed in Texas. 2021 WL 330195, at *1–2, 5–6. Therefore, *Calyx* does not support VR4's argument.

–17–

The existence of the Texas choice of law provision in the 2016 agreement also does not establish that VR4's claims arise out of or relate to Concord's business activities in Texas. *See Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (explaining that a choice of law provision is not dispositive of whether a defendant has purposefully availed itself of one state's law; it "is merely one factor to consider in determining whether a forum state has personal jurisdiction over a nonresident defendant"). The choice of law provision provides that the agreement shall be governed by the laws of Texas; it does not provide that performance of the contract is *in* Texas, and it is not a consent to jurisdiction in Texas like a forum selection clause. *See In re AutoNation, Inc.*, 228 S.W.3d 663, 668–70 (Tex. 2007).

In sum, the operative facts of VR4's claims against Concord do not concern Concord's contacts with Texas; they concern Concord's contacts with Oklahoma. Therefore, the trial court erred by concluding it had personal jurisdiction over Concord and by denying its special appearance.[6]

## VR4's Request to Remand for Further Discovery

---

[6] To the extent we have not addressed some of Concord's sub-arguments regarding whether the trial court erred in considering certain evidence when ruling on Concord's special appearance, it is unnecessary for us to resolve those arguments because we have concluded that, even considering all evidence and arguments filed before or presented at the special appearance hearing, the trial court erred in denying Concord's challenge to personal jurisdiction. *See* TEX. R. APP. P. 47.1.

VR4 urges this Court, if we reverse the trial court's judgment, to remand with instructions for the trial court to allow VR4 to file a motion to compel the discovery that Concord refused to provide. VR4 argues that Concord objected to and refused to answer questions about the genesis of the 2016 Base Contract, whether it sold gas in Texas, whether its employees traveled to Texas, and whether the contract was negotiated in Texas, among other things. VR4 says it chose not to waste its and the trial court's time and resources litigating motions to compel at this early stage given Concord's undisputed contacts with Texas already in evidence. We reject VR4's invitation to remand for further discovery. It is the plaintiff's burden to establish that the trial court has personal jurisdiction over the defendant. *Kelly*, 301 S.W.3d at 659. If VR4 believed further discovery was necessary to meet its burden, it should have pursued options to obtain such discovery before the trial court heard Concord's special appearance motion.

## Conclusion

We reverse the November 30, 2021 order of the trial court denying Concord's special appearance and render judgment granting Concord's special appearance and dismissing VR4's claims against it.

/Craig Smith/
_____
CRAIG SMITH
221126F.P05                                                JUSTICE

–19–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CONCORD ENERGY, LLC,
Appellant

No. 05-21-01126-CV    V.

VR4-GRIZZLY, LP, Appellee

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-10333.
Opinion delivered by Justice Smith.
Chief Justice Burns and Justice
Nowell participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant Concord Energy, LLC's special appearance is **REVERSED** and judgment is **RENDERED** granting Concord Energy, LLC's special appearance and dismissing VR4-Grizzly, LP's claims against Concord Energy, LLC.

It is **ORDERED** that appellant CONCORD ENERGY, LLC recover its costs of this appeal from appellee VR4-GRIZZLY, LP.

Judgment entered this 22nd day of November 2022.