

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-20-00248-CV

_____

ADAM LARGENT, Appellant

V.

CASSIUS CLASSIC CARS & EXOTICS, LLC, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-316092-20

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In 2020, Cassius Classic Cars & Exotics, LLC brought suit in Texas against Adam Largent, a Washington resident. Cassius alleged DTPA violations, fraud, breach of contract, and negligence. Largent filed a special appearance in which he argued that Texas lacked personal jurisdiction over him. The trial court denied the special appearance, and Largent appealed.

In resolving this appeal, we draw guidance from *Moncrief Oil International Inc. v. OAO Gazprom*, 414 S.W.3d 142, 147 (Tex. 2013). That case's comparable facts and salient reasoning show that Texas can assert specific jurisdiction over Cassius's DTPA, fraud, and contract claims. However, *Moncrief Oil* also counsels that Cassius fell short of establishing minimum contacts for its negligence claim. We therefore reverse and render a judgment of dismissal as to the negligence claim. We affirm the denial of the special appearance in all other respects.

## I. STANDARD OF REVIEW

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant. *Id.*; *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). To determine whether the plaintiff satisfied its pleading burden and to determine the basis for jurisdiction alleged by the plaintiff, a court considers the allegations in the plaintiff's petition as well as those in its

2

response to the defendant's special appearance. *Am. Refrigeration Co. v. Tranter, Inc.*, No. 02-15-00265-CV, 2016 WL 5957018, at *3 (Tex. App.—Fort Worth Oct. 13, 2016, no pet.) (mem. op.); *accord Madison Dev. Grp. LLC v. Mattress Firm, Inc.*, 608 S.W.3d 376, 388–89 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction in the plaintiff's pleadings. *Searcy*, 496 S.W.3d at 66.

The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic*, 549 S.W.3d at 558. When the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence. *Id.*; *Moncrief Oil*, 414 S.W.3d at 150. We may review these findings for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## II.    APPLICABLE LAW

Texas courts have personal jurisdiction over a defendant when the Texas long-arm statute grants jurisdiction and the exercise of jurisdiction comports with federal and state constitutional guarantees of due process. *Searcy*, 496 S.W.3d at 66. Texas's long-arm statute stretches as far as due process will allow, so federal due-process requirements shape the contours of Texas courts' jurisdictional reach. *Id.*

A state's exercise of jurisdiction comports with federal due process if (1) the nonresident defendant has "minimum contacts" with the state and (2) the exercise of

3

jurisdiction "does not offend traditional notions of fair play and substantial justice." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016) (cleaned up) (quoting *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121 (2014)). A defendant establishes minimum contacts with a forum when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moncrief Oil*, 414 S.W.3d at 150. Three primary considerations underlie the purposeful-availment analysis: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the forum such that it impliedly consents to suit there. *Cornerstone*, 493 S.W.3d at 70–71. Although physical presence in the forum is a relevant contact, it is not a prerequisite to jurisdiction. *Cornerstone*, 493 S.W.3d at 71 (quoting *Walden*, 571 U.S. at 285, 134 S. Ct. at 1122).

Minimum contacts may create either general or specific personal jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). A court has general jurisdiction over a nonresident defendant whose affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014). For an individual such as Largent, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Id.* at 137, 134 S. Ct. at 760. When a court has general jurisdiction over a nonresident, it

4

may exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state." *TV Azteca*, 490 S.W.3d at 37 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)).

"Unlike general jurisdiction, which requires a more demanding minimum contacts analysis, specific jurisdiction may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state." *Spir Star*, 310 S.W.3d at 873 (citations and internal quotations omitted). To assess whether there is specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction is appropriate when (1) the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to the defendant's contacts. *Id.* Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182 (1985); *Moncrief Oil*, 414 S.W.3d at 151. Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities. *Burger King*, 471 U.S. at 473–74, 105 S. Ct. at 2183. However, "but-for causation alone is insufficient" to establish minimum contacts; it is not enough that the harm would not have been possible without the defendant's contacts. *Moncrief Oil*,

414 S.W.3d at 157 (citing *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)).

Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *Id.* at 150. A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim. *Id.*

### III.    MINIMUM CONTACTS

On appeal, Largent brings three issues, which relate to (1) whether the trial court erred in denying the special appearance (2) because there is no general jurisdiction and (3) no specific jurisdiction.

In Cassius's petition and response to the special appearance, it alleged the following facts pertaining to Largent's contacts with Texas:

- Largent marketed himself online as a seller of vintage trucks and a restoration expert, and the Texas-based company Cassius came across that marketing. Cassius bought a truck from Largent through an eBay auction. After the auction, Largent called Cassius in Texas, without any invitation on Cassius's part, to inquire about doing further business.

- Largent proposed a plan: Cassius would loan Largent a truck and a trailer (which were located in Texas), and Largent would transport two vintage Broncos belonging to Cassius from Texas to Washington for restoration. On the call, Largent also convinced Cassius to meet with him in person.

6

- Largent traveled to Cassius's office in Texas to pitch the company on a continuing business venture. Largent gave a prepared sales presentation in which he represented that he had the skill required to restore vintage vehicles for a fraction of his competitor's prices.

- At the meeting, Largent and Cassius negotiated a contract price ($15,000) for the plan to haul Cassius's Broncos back to Largent's shop in Washington. While Largent was in Texas, Cassius paid him the $15,000 and lent him the truck and trailer.

- Once back in Washington, Largent neglected to repair the Broncos.

- Via communications with Texas, Largent continued to sell Cassius vehicles that Largent assured were of the highest quality.

- Largent told Cassius that the truck he had used to haul the Broncos to Washington was "fried." Largent convinced Cassius to pay for third-party shipping to get the truck back to Texas, whereupon Cassius learned that it was simply out of fuel. Cassius began to question the quality of Largent's work. It told Largent to stop all work, but Largent continued to do unauthorized restorative work and bill Cassius for it in Texas. Cassius also demanded the return of its truck and trailer, but Largent failed to return them.

Cassius brought four causes of action against Largent: DTPA violations, fraud, breach of contract, and negligence.

Based on this factual scenario, we see nothing that approaches general jurisdiction. There was little about Largent's dealings with Cassius or his single visit to the state that would have made him essentially at home here. *See Daimler*, 571 U.S. at 127, 134 S. Ct. at 754. We sustain Largent's second issue. Thus, the question is whether Texas may assert specific jurisdiction over Cassius's claims.

*Moncrief Oil* provides a useful framework for analyzing specific jurisdiction in this case. There, the Texas-based oil company Moncrief Oil had a business relationship with the Russian oil company Gazprom. *Moncrief Oil*, 414 S.W.3d at 148. Moncrief Oil also had dealings with the California-based Occidental Petroleum, with which it had an alleged trade secret: a planned joint venture to build a gas facility in Texas. *Id.* In 2004, the three companies began talks to establish a natural gas importing concern in the US. *Id.* During negotiations, Moncrief Oil disclosed its trade-secret information to Gazprom at various meetings, first in Russia, then in Washington D.C., Boston, and Texas. *Id.* But Gazprom later met with Occidental representatives in California, and the meeting allegedly led Occidental to terminate its proposed joint venture with Moncrief Oil. *Id.* Gazprom's subsidiary then formed its own US subsidiary to sell natural gas to the US market. *Id.* at 148–49.

Moncrief Oil sued Gazprom and its subsidiaries for trade-secret misappropriation and tortious interference with its Occidental business dealings. *Id.* at 149. The trial court granted the Gazprom defendants' special appearances. *Id.*

8

On appeal, the Texas Supreme Court reversed in part, holding that Texas courts could exercise personal jurisdiction over the trade-secret tort claims because they arose, in substantial part, from business meetings held in Texas where the trade secrets were divulged. *Id.* at 153–54. However, the court held that Texas could not maintain jurisdiction over the tortious-interference claims because, in relevant part, they arose from the California meeting that allegedly led to the termination of Occidental's joint venture with Moncrief Oil. *Id.* at 156–57.

Similar treatment is warranted here. As with Moncrief Oil's trade-secret claim, Cassius's claims for DTPA violations, fraud, and breach of contract arose in large part from a meeting in Texas as well as other contacts with Texas. In light of those substantial contacts and their connection to Cassius's causes of action, these claims satisfy the first prong of our due-process inquiry. However, as we explain, Cassius's negligence claim better resembles Moncrief Oil's tortious-interference claims in that the negligence claim has little to do with the Texas meeting or any other Texas contacts, and therefore, specific jurisdiction over that claim is not appropriate.

## A.    Cassius's DTPA, Fraud, and Contract Claims

The initial dealings between Largent and Cassius, which took place via eBay and telephone, make only minor contributions to our minimum-contacts analysis.[1] A more

---

[1]The alleged fact that Cassius bought a car from Largent via eBay, standing alone, adds little to the jurisdictional mix, because the website was not Largent's own dedicated ecommerce site and there was no allegation that it offered a substantial opportunity for

9

significant and substantial set of contacts was that Largent arranged and attended a meeting in Texas in order to propose a continuing business arrangement with Cassius, to negotiate and seal an agreement, to borrow a truck and trailer, and to collect and haul the two Broncos back to Washington. Three of Cassius's claims—DTPA, fraud, and breach of contract—appear to arise from those purposeful Texas contacts. As Cassius explained in its response to the special appearance, Largent made fraudulent and deceptive representations during the Texas meeting, including representations concerning Largent's qualifications and the quality of his cars. Furthermore, the Texas meeting birthed the continuing contractual relationship that Largent allegedly breached in the ensuing months, and Largent partially performed the first of the contracts in Texas. Just as Moncrief Oil's trade-secret claims could constitutionally be heard in Texas because they partially arose out of a set of Texas meetings in which Moncrief Oil pitched Gazprom a business venture, Texas may validly assert specific jurisdiction over

online interaction between Largent and Cassius. *See Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 677 (Tex. App.—Fort Worth 2001, no pet.) (explaining that dedicated ecommerce sites and sites that offer substantial opportunities for interaction may give rise to minimum contacts, whereas "passive" sites do not); *see, e.g.*, *Karstetter v. Voss*, 184 S.W.3d 396, 405 (Tex. App.—Dallas 2006, no pet.) (holding a car sale via eBay insufficient to establish minimum contacts where "the interaction between the parties was minimal"). Likewise, Largent's phone call to Texas brings Cassius little closer to establishing minimum contacts. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005); *Furtek & Assocs., L.L.C. v. Maxus Healthcare Partners, LLC*, No. 02-15-00309-CV, 2016 WL 1600850, at *5 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.).

three of Cassius's claims because they germinated from the Texas meeting in which Largent proposed a venture to Cassius.

The *Moncrief Oil* opinion offered several reasons in defense of its holding, and those very same rationales lend support to the exercise of personal jurisdiction over Cassius's DTPA, fraud, and contract claims. "[A] nonresident's contacts are not unilateral or random and fortuitous when the defendant has created continuing obligations between *himself* and residents of the forum, which shields the nonresident with the benefits and protections of the forum's laws." *Id.* at 151 (quotations omitted). Jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state, and "[a] substantial connection can result from even a single act." *Id.* "Physical presence in the state is not required but frequently will enhance a potential defendant's affiliation with a [s]tate and reinforce the reasonable foreseeability of suit there." *Id.* at 152 (internal quotations omitted). Here, Largent's conduct during his visit to Texas resulted in continuing obligations that were protected by Texas law, and his commission of torts and his entry into and partial performance of a contract while physically present in the state should have made the possibility of suit here keenly foreseeable.

The allegations that Largent committed torts and sealed contracts here also enhances this state's constitutional stake in the matter. "[I]t is beyond dispute that a forum has a significant interest in redressing injuries that actually occur within the [s]tate." *Id.* (cleaned up) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776, 104

S. Ct. 1473, 1479 (1984)). "A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory." *Id.* (quoting *Keeton*, 465 U.S. at 776, 104 S. Ct. at 1479). "This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort."[2] *Id.* (quoting *Keeton*, 465 U.S. at 776, 104 S. Ct. at 1479). "Of course, states have an interest in protecting against more than torts, and the Supreme Court has recognized state interests in protecting regulatory schemes and contracts as well." *Id.* These contract and tort considerations could be said to lower our bar for minimum contacts, because the forum state's "interest in adjudicating the dispute" may "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184.

The *Moncrief Oil* court emphasized that the Gazprom defendants' "contacts were purposeful and substantial because their activity was aimed at getting extensive business in or from the forum state" and that the Gazprom defendants had a say in whether or not to come to Texas and attend the meeting. *See* 414 S.W.3d at 153 (internal quotation omitted). Likewise, here, Largent was not swept into Texas through no accord of his

---

[2]To wit, the *Moncrief Oil* court quoted the Fifth Circuit's holding in a prior appeal that "even without other contacts, jurisdiction would exist if Gazprom committed a tort while in the state." 414 S.W.3d at 148 (quoting *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007)).

12

own; he specifically elected to come to Texas with the goal of enlarging his business prospects in the state.

Finally, the effect of the DTPA violations, fraud, and the contracts' fulfillment or breach would be felt in Texas. *See Walden*, 571 U.S. at 287, 134 S. Ct. at 1123 (citing *Calder v. Jones*, 465 U.S. 783, 788–89, 104 S. Ct. 1482, 1486 (1984)) (reaffirming *Calder*'s reasoning: the fact that the "brunt" of the alleged injury would be felt in the forum state contributes to minimum contacts). *But see Searcy*, 496 S.W.3d at 68–69 (cautioning that this sort of effects-based reasoning alone is insufficient to establish personal jurisdiction). Specifically, as to the breach-of-contract claim, *Burger King* recognized that a "contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." 471 U.S. at 479, 105 S. Ct. at 2185 (internal quotation omitted). "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*, 105 S. Ct. at 2185; *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 190 (Tex. App.—Dallas 2015, no pet.). Here, the central aim of the contract was to obtain a set of consequences—restored classic cars—that Largent would deliver to Texas in exchange for remuneration from a Texas resident, and the effect of the breach—deprivation of property and finances—would have been felt in Texas as well. The allegation that the torts' harm and the contracts' fulfillment or

13

breach would have been felt in Texas adds at least something to the quality of the contacts, *see Walden*, 571 U.S. at 287, 134 S. Ct. at 1123; *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185, even though that allegation would not, were it by itself,[3] automatically carry the day. *See Searcy*, 496 S.W.3d at 68–69.

The sum of these considerations, as applied to the facts alleged before us, provides mounting support for Cassius's case on minimum contacts with respect to these three claims. Indeed, in *City of White Settlement v. Emmons*, we held on analogous facts that a meeting in Texas, at which the defendant negotiated a contract with a Texas resident concerning Texas-based assets, was sufficient to show minimum contacts for the resulting breach-of-contract claim. No. 02-17-00358-CV, 2018 WL 4625823, at *16 (Tex. App.—Fort Worth Sept. 27, 2018, pet. denied) (mem. op.); *see, e.g.*, *Hoagland v. Butcher*, 474 S.W.3d 802, 814–15 (Tex. App.—Houston [14th Dist.] 2014, no pet.)

---

[3]Courts should avoid a "divide and conquer" approach to minimum contacts. *Rome v. Reyes*, 401 P.3d 75, 82 (Colo. App. 2017). "We cannot isolate each individual contact when assessing whether the [plaintiff] has raised a reasonable inference of jurisdiction over [the defendant]. Instead, we consider the contacts in their totality." *Id.*; *accord Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) ("[W]e look to the totality of Defendants' contacts with the forum state."); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) ("While the number of contacts with the forum state is not determinative, it is indeed one of the relevant factors to be considered within the totality of the circumstances in assessing the propriety of exercising personal jurisdiction over a nonresident."); *see Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 99 (3d Cir. 2004) (assessing the "totality" of contacts); *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 908–09 (6th Cir. 1988) (same); *2007 E. Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 208–09 (Tex. App.—Dallas 2010, pet. denied) (same); *Ark Of Safety Christian Church, Inc. v. Church Loans & Invs. Tr.*, No. 07-05-0273-CV, 2006 WL 334280, at *4 (Tex. App.—Amarillo Feb. 14, 2006, no pet.) (mem. op.) (same); *Michel*, 45 S.W.3d at 681–82 (same).

(holding jurisdictional allegations sufficient to show minimum contacts, in part because the defendants traveled to Texas to propose and secure a continuing contractual relationship with a Texas resident that contemplated partial performance in Texas). In *Emmons*, we further held that "[a] nonresident who, while physically present in the [s]tate of Texas, makes statements alleged to be fraudulent is subject to specific jurisdiction in Texas in a subsequent action arising from the statement." *See* 2018 WL 4625823, at *14; *Patel v. Pate*, No. 02-16-00313-CV, 2017 WL 2871684, at *5 (Tex. App.—Fort Worth July 6, 2017, no pet.) (mem. op.); *see, e.g.*, *Peter v. Stern*, No. 05-20-00021-CV, 2020 WL 4783192, at *5 (Tex. App.—Dallas Aug. 18, 2020, pet. filed) (mem. op.) (holding that the defendant's recruitment of an investor, which took place in Texas and was the basis for a fraud claim, was sufficient to establish minimum contacts). True to these holdings, we conclude that Cassius carried its initial burden to allege sufficient minimum contacts for his DTPA, fraud, and contract claims.

The burden therefore shifted to Largent to negate all potential bases for personal jurisdiction in Cassius's pleadings. *See Searcy*, 496 S.W.3d at 66. The nonresident defendant can negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.* Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the

15

claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

Much of Largent's affidavit concerned the contacts that he did not have with Texas. For example, he testified,

> I do not employ any representatives who reside or travel in Texas. I do not market to Texas nor do I send any sales brochures into the state of Texas. I do not maintain any offices in the state of Texas. I do not own any property in Texas, nor have I ever filed a lawsuit in Texas.

None of these averments, even if true, tend to negate Cassius's factual allegations concerning the Texas contacts that Largent *did* have for purposes of specific jurisdiction. If anything, the logical thrust of this testimony is that Largent's contacts were not so continuous, systematic, and pervasive that Texas could exercise general jurisdiction over him. But we have already concluded that there is no basis for general jurisdiction.

Elsewhere in his affidavit, Largent implicitly disputed at least one of Cassius's allegations on a factual basis. Largent testified that after Cassius purchased the first vehicle on eBay, it was Cassius that contacted Largent to explain that it was interested in buying more vehicles and having Largent restore the two Broncos. This testimony ran counter to Cassius's allegation that Largent reached out to Cassius first and initiated discussions concerning the Broncos.

However, we have already determined that the effect of these initial phone calls pales in comparison to the significance of the Texas meeting as well as the torts and

16

contracts that allegedly resulted. Largent's affidavit leaves those allegations—and the implied findings that stem from them—unchallenged and intact. *See Old Republic*, 549 S.W.3d at 558. In light of those undisputed allegations, we conclude Largent did not factually negate the pleaded bases for personal jurisdiction.

And the content of Largent's affidavit offers no reason to conclude that Cassius's jurisdictional pleadings are legally inadequate. True, as to the contract claim, Largent's affidavit indicates that many of the alleged contractual breaches would have occurred in Washington, if they occurred at all. But the *Moncrief Oil* court held it was enough that the seeds of the trade-secret torts were sowed in Texas when the trade secrets were shared here and the tort was partially committed here, even though the torts' commission also spilled over into Russia, Washington D.C., and Boston. 414 S.W.3d at 153–54. Likewise, here, even though the substance of the breach-of-contract claim bled across the Texas border, the factual allegations before us—that the defendant was physically present in Texas when he purposefully solicited, negotiated, sealed, and partially performed a contract giving rise to continuing obligations with a Texas resident concerning repair of Texas-based assets, and that the effect of breaching those obligations was felt here—are sufficient to establish minimum contacts for the resulting breach claim. *See id.*; *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 848–50 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (concluding that a Texas meeting to negotiate core aspects of a contract for repair of a boat was sufficient to establish minimum contacts with this state, even though performance would occur

17

elsewhere).  The defendant need not be so entwined with Texas that suit in any other place would be absurd.  Rather, the contacts need only render the possibility of suit here a constitutionally fair, foreseeable, and consented-to alternative among other possible fora for suit.  *See Cornerstone*, 493 S.W.3d at 70–71; *Moncrief Oil*, 414 S.W.3d at 152.  Largent's affidavit does not show otherwise.

We therefore conclude that Largent did not carry his responsive burden.  Through its pleadings, Cassius established minimum contacts for its DTPA, fraud, and contract claims.

## B.    Cassius's Negligence Claim

We cannot say the same for Cassius's negligence claim.  In that claim, Cassius alleged that Largent breached his duties by negligently restoring and selecting cars for Cassius.  It is undisputed that the majority of the car selection and all of the restoration took place in Washington.  This claim has little to do with Texas; its crux is allegedly negligent actions that were performed 1,800 miles away.

In *Moncrief Oil*, the court held that the plaintiff's tortious-interference claims did not arise from either of the Texas meetings, but from Gazprom's meeting with Occidental in California.  *See* 414 S.W.3d at 156.  The court held that Texas courts therefore could not exercise personal jurisdiction over the tortious-interference claims.  *Id.*  For support, the court drew upon its own precedent in *Moki Mac*, and *Moncrief Oil*'s gloss on *Moki Mac* seems directly on point here:

18

In *Moki Mac*, a Texas teenager fell to his death in Arizona while on a hike supervised by a Utah-based company. His parents filed suit against the company in Texas for wrongful death, maintaining the claim arose from misrepresentations in documents the company mailed to them in Texas as well as the company's other Texas contacts. We disagreed, holding "the operative facts of the plaintiffs' suit concern principally the guides' conduct of the hiking expedition and whether they exercised reasonable care in supervising" the teenager. We further observed the "events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question."

*Id.* (cleaned up) (citing and quoting *Moki Mac*, 221 S.W.3d at 573, 576, 585). To the extent that Moncrief Oil's tortious-inference claims concerned the meeting in California, the *Moncrief Oil* court found *Moki Mac* instructive:

Much like the accident in *Moki Mac* would not have occurred but for executing contract materials in Texas, the establishment of a competing enterprise arguably would not be possible without the Gazprom Defendants' purported acquisition of the alleged trade secrets. However, but-for causation alone is insufficient. Just as the wrongful death claim in *Moki Mac* was principally concerned with alleged negligence in Arizona, the tortious interference claim here is principally concerned with the California meeting and the competing Texas enterprise—not the purported misappropriation of alleged trade secrets.

*Id.* at 157 (cleaned up) (citing *Moki Mac*, 221 S.W.3d at 585).

Like *Moki Mac* and *Moncrief Oil*, Cassius did not allege that any negligent acts occurred in Texas, and the nub of Cassius's negligence claim was the quality of the repairs and car selection that Largent performed in his home state. The focus of the trial on this claim will not be on the Texas meeting but on events that occurred in Washington. The only remote connection between Cassius's negligence claim and Texas is that the negligent acts were made possible by the Texas meeting, but under

19

binding precedent, that sort of but-for causation is inadequate for minimum contacts. *See id.*

Because minimum contacts are lacking, we hold that a Texas court cannot assert personal jurisdiction over this claim. *See Cornerstone*, 493 S.W.3d at 70. Thus, to the extent that Largent challenges jurisdiction with respect to the negligence claim in his first and third issues, we sustain those issues.

## IV. FAIR PLAY AND SUBSTANTIAL JUSTICE

We next assess whether Cassius's remaining DTPA, fraud, and contract claims withstand the second prong of our inquiry, fair play and substantial justice. We conclude that they do.

"If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154–55. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Spir Star*, 310 S.W.3d at 878. To defeat jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render

jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184–85; *Spir Star*, 310 S.W.3d at 878–79.

Largent has not put on the sort of compelling case that is required to prevail on this prong. His central argument as to why notions of fairness make it unconstitutional for Texas to exercise jurisdiction is that the distance would burden him, but "distance alone" is not "ordinarily sufficient to defeat jurisdiction: modern transportation and communication have made it much less burdensome for a party sued to defend himself in a [s]tate where he engages in economic activity." *Spir Star*, 310 S.W.3d at 879 (internal quotations omitted). Given Largent's "history of attending meetings in Texas, the burden of litigating here is not so great as to defeat jurisdiction." *See Hoagland*, 474 S.W.3d at 816.

Moreover, Cassius is a Texas resident. Any inconvenience to the out-of-state defendant "is somewhat mitigated by the convenience" of allowing Cassius to litigate in the forum where the fraud and DTPA torts were in part committed and the contractual relationship sprouted. *See Moncrief Oil*, 414 S.W.3d at 155. Finally, the allegations that Largent "committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute." *See id.*

On balance, this is not one of the rare cases where exercising jurisdiction fails to comport with fair play and substantial justice. *See id.* at 156. Accordingly, we hold that the trial court did not err in denying the special appearance as to Cassius's DTPA, fraud, and contract claims. We overrule the remainder of Largent's first and third issues.

21

## V.   CONCLUSION

We reverse and render judgment of dismissal as to Cassius's negligence claim.

We affirm the trial court's denial of the special appearance in all other respects.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered:  December 10, 2020

22