**Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion filed August 30, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00825-CV

---

### MOTOR COACH INDUSTRIES, INC. AND MOTOR COACH INDUSTRIES LIMITED, Appellants

### V.

### MARIA DEL REFUGIO AS NEXT FRIEND OF LAURA NANEZ; ANTONIO ALVAREZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATES OF PEDRO ALVAREZ AND JOVITA ALVAREZ, DECEASED; CRUZ ALVAREZ, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE ESTATES OF PEDRO ALVAREZ AND JOVITA ALVAREZ; ADRIANA Y. ZUNIGA CASTAÑEDA, INDIVIDUALLY AND AS NEXT FRIEND OF ABDIEL ZUNIGA, MINOR CHILD AND YAZLINE ZUNIGA, MINOR CHILD; LUCIO LARES DE LA FUENTE; MARTHA ORTEGA GARCIA, INDIVIDUALLY AND AS NEXT FRIEND OF LANCEL ALEJANDRO ORTEGA, MINOR CHILD; ROSA CRUZ MESA; MANUELA CARDENAS MORENO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JOSE GARCIA AVILA; CLARA QUEVADO RANGEL; ANA MARIA FLORES RIVERA; MONICA RODRIGUEZ; JOSE SALDIVAR; SARAIT SAMANIEGO; JOSEFINA GARCIA CARDENAS; MARIA ESTHER GARCIA CARDENAS; LUZ MARIA GARCIA CARDENAS; GERARDO GARCIA CARDENAS; JOSE LUIS GARCIA CARDENAS; ALEJANDRA GARCIA CARDENAS;**

**FILIBERTO PUENTE; ROSA MARIA ZUNIGA; ABC BUS LEASING, INC.; ABC BUS COMPANIES, INC.; ABC TEXAS BUS SALES, INC.; AND ABC BUS, INC., Appellees**

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-83481**

---

**MEMORANDUM OPINION**

In six issues which we consolidate to one, appellants Motor Coach Industries, Inc. (MCI) and Motor Coach Industries Limited (MCIL) argue in this interlocutory appeal that the trial court reversibly erred by denying their special appearances.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (interlocutory

---

[1] We consolidate the issues because issues 2 through 6 are subarguments to issue 1. As listed in appellants' brief, the issues are:

1. Did the trial court err by denying MCIL's and MCI's special appearances?

2. Did the trial court err by denying MCIL's and MCI's special appearances where there was no evidence that either of these entities had such continuous and systematic contacts that they were essentially at home in Texas?

3. Did the trial court err by denying MCIL's and MCI's special appearances where there was no evidence that the Plaintiffs' and Intervenors' claims against them sufficiently arose out of or related to any of the alleged jurisdictional contacts MCIL or MCI may have had with Texas?

4. Did the trial court err by denying MCIL's and MCI's special appearances where there was no evidence that MCIL and MCI engaged in sufficient "additional conduct" indicating an intent or purpose to "serve the market" in Texas with respect to the operative facts of this products liability case?

5. Did the trial court err by denying MCIL's and MCI's special appearances where there was no evidence that exercising personal jurisdiction over MCIL and MCI would comport with traditional notions of fair play and substantial justice?

6. Did the trial court err by denying MCIL and MCI's special appearances because, to extent that any of the trial court's findings are truly fact findings, there is no legally or factually sufficient evidence to support findings 9-16?

Each of these arguments is addressed in the court's analysis and disposition of consolidated issue 1.

appeal from denial of special appearance). We sustain appellants' consolidated issue 1 as to MCIL, reverse the portion of the trial court's order denying MCIL's special appearance, and render judgment dismissing for want of personal jurisdiction claims against MCIL brought by appellees Maria Del Refugio as next friend of Laura Nanez; Antonio Alvarez, individually and as representative of the estates of Pedro Alvarez and Jovita Alvarez, deceased; Cruz Alvarez, individually and as representative of the estates of Pedro Alvarez and Jovita Alvarez; Adriana Y. Zuniga Castañeda, individually and as next friend of Abdiel Zuniga, minor child and Yazline Zuniga, minor child; Lucio Lares de la Fuente; Martha Ortega Garcia, individually and as next friend of Lancel Alejandro Ortega, minor child; Rosa Cruz Mesa; Manuela Cardenas Moreno, individually and as representative of the estate of Jose Garcia Avila; Clara Quevado Rangel; Ana Maria Flores Rivera; Monica Rodriguez; Jose Saldivar; Sarait Samaniego; Josefina Garcia Cardenas; Maria Esther Garcia Cardenas; Luz Maria Garcia Cardenas; Gerardo Garcia Cardenas; Jose Luis Garcia Cardenas; Alejandra Garcia Cardenas; Filiberto Puente; and Rosa Maria Zuniga (collectively, plaintiffs); and appellees ABC Bus Leasing, Inc.; ABC Bus Companies, Inc.; ABC Texas Bus Sales, Inc.; and ABC Bus, Inc. (collectively, ABC defendants).[2] We overrule the remainder of consolidated issue 1 and otherwise affirm the trial court's order as challenged on appeal.

## I. BACKGROUND

This case arises out of a 2017 bus accident that occurred in Villa De Cos,

---

[2] This listing of appellees is consistent with the appellees identified in the parties' briefs. The subgroup of appellees defined as "plaintiffs" are either named plaintiffs in the underlying lawsuit or intervening plaintiffs in the underlying lawsuit asserting substantively identical claims to the named plaintiffs. We note that the record does not reflect whether the various "representatives" of estates are, in fact, executors or administrators of the estates in question. As that matter is not relevant to our analysis, we express no opinion as to whether the parties named as estate "representatives" in the pleadings and briefs have been properly designated as such.

Mexico. MCIL designed and manufactured the bus in question in 2004 in Canada. MCIL sold the new bus to MCI, which then sold the bus to an unspecified non-party in New Jersey. In 2015, the bus was sold to Francisco Tours, a Texas-based tour operator.

Plaintiffs are individuals who contracted with Francisco Tours for transportation on the bus from Texas to Mexico. Numerous plaintiffs allege without dispute that they are Texas residents. Plaintiffs allege the accident at issue was caused by defects in the bus and bring products-liability, breach-of-warranty, and negligence claims against appellants MCI and MCIL, along with a third related entity, MCI Sales and Service, Inc. (MCISS), in addition to asserting claims against other defendants, including the ABC defendants. The ABC defendants, who are alleged to have sold the bus to Francisco Tours, brought cross-claims against MCI, MCIL, and MCISS for manufacturer indemnity and contribution.

MCI, MCIL, and MCISS filed special appearances in the trial court. The trial court denied MCI and MCIL's special appearances and granted MCISS's special appearance. MCI and MCIL appeal the trial court's interlocutory order denying their special appearances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

## II.    GOVERNING LAW

The broad "doing business" language in the Texas long-arm statute allows the exercise of personal jurisdiction to "reach[ ] as far as the federal constitutional requirements of due process will permit." *U-Anchor Advert., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977) (interpreting former Revised Statutes art. 2031b, Act of Mar. 18, 1959, 56th Leg., R.S., ch. 43, § 4, 1959 Tex. Gen. Laws 85, 85–86) (amended 1979) (current version at Tex. Civ. Prac. & Rem. Code § 17.042)). Due process is satisfied when the nonresident defendant has established minimum

contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A nonresident defendant's minimum contacts can create either specific or general jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three components to the "purposeful availment" inquiry. *Id.* First, the relevant contacts are those of the defendant, not the unilateral activity of another party or a third person. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985). Second, the contacts must be purposeful rather than random, fortuitous, isolated, or attenuated. *Id*. Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

A trial court has specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the cause of action arises from or relates to those contacts. *Burger King*, 471 U.S. at 472. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colom. v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction is established when the defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the forum. *Id*. at 414 & n.8. The nonresident defendant must take action that is purposefully directed at the forum state. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 577 (Tex. 2007). To determine whether the nonresident defendant purposefully directed action toward Texas, we examine the nonresident

5

defendant's conduct indicating an intent or purpose to serve the Texas market. *Id*.

A trial court has general jurisdiction over a nonresident defendant when the defendant's contacts with the forum state are so continuous and systematic that the defendant is essentially at home in the state. *TV Azteca*, 490 S.W.3d at 37. When a nonresident defendant is subject to general jurisdiction, the trial court may exercise jurisdiction over the defendant even if the plaintiff's claim does not arise from or relate to the defendant's contacts with the forum. *Id*. This test requires substantial activities within the forum and is more demanding than the test for specific jurisdiction. *Id*. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *see Domicile*, Black's Law Dictionary (11th ed. 2019), *available at* Westlaw ("The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.").

In a special appearance, the plaintiff and the defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.*; *see* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. A defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id*. Or the defendant can show

that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id*. If the defendant meets its burden of negating all alleged bases of personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *See id*. at 660.

Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, although the trial court frequently must resolve questions of fact in order to decide the issue. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A trial court should resolve a party's special appearance based on the pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. Tex. R. Civ. P. 120a(3). When, as here, the trial court issues findings of fact and conclusions of law in connection with its special-appearance ruling, the defendant may challenge the trial court's factual findings for legal and factual sufficiency.[3] *BMC Software*, 83 S.W.3d at 794.

---

[3] We note that the trial court's "findings of fact" primarily restate the standards for personal jurisdiction instead of resolving disputed jurisdictional facts, and accordingly factor little in our analysis. The trial court's relevant findings of fact state:

> 9. The Court finds that MCI has established minimum contacts with the State of Texas.
>
> 10. The Court further finds that the MCI has purposefully availed itself of the privileges of conducting activities in Texas.
>
> 11. The Court further finds that MCI has invoked the benefits and protections of the laws of the State of Texas.
>
> 12. The Court further finds that the exercise of jurisdiction over MCI comports with traditional notions of fair play and substantial justice.
>
> 13. The Court finds that MCIL has established minimum contacts with the State of Texas.
>
> 14. The Court further finds that the MCIL has purposefully availed itself of the privileges of conducting activities in Texas.

# III. ANALYSIS

## A. Challenge to "entire proceeding"

We begin with a question affecting the scope of our review. Appellants filed separate special appearances responding to plaintiffs' claims and to the ABC defendants' cross-claims. While appellants primarily respond to plaintiffs' arguments in their appellate brief, they also note that the ABC defendants did not plead jurisdictional facts in their cross-claim and did not attach evidence to their response to appellants' special appearance. Appellants argue that the ABC defendants accordingly did not meet their burden under the burden-shifting process outlined in *Kelly*, separate and apart from whether plaintiffs met their burden. *See* 301 S.W.3d at 658–60.

Under Texas Rule of Civil Procedure 120a, "A special appearance may be made as to an entire proceeding or as to any severable claim involved therein." Tex. R. Civ. P. 120a(1). A claim is severable if (1) the controversy involves more than one cause of action, (2) the severed claim would be the proper subject of a lawsuit if asserted independently, and (3) the claim to be severed is not so interwoven with the remaining action that they involve the same facts and issues. *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007).

Appellants did not argue in the trial court or in this court that the ABC defendants' claims for indemnity can or should be severed from the plaintiffs' claims. Likewise, the trial court did not sever any claims or make findings relating to severance. Because appellants have not sought or obtained severance of any of

---

15. The Court further finds that MCIL has invoked the benefits and protections of the laws of the State of Texas.

16. The Court further finds that the exercise of jurisdiction over MCIL comports with traditional notions of fair play and substantial justice.

the claims in this case for purposes of challenging personal jurisdiction, we construe their special appearances as challenging the "entire proceeding." Tex. R. Civ. P. 120a(1); *see Cappuccitti v. Gulf Indus. Products, Inc.*, 222 S.W.3d 468, 480 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (when defendants did not assert that specific claims were severable and make their special appearances only as to those claims, question for court was whether special appearance was warranted as to entire proceeding). Accordingly, we will review the evidence in the record to determine whether there is personal jurisdiction over appellants as to *any* claim asserted against appellants, and not as to each of plaintiffs' claims and the ABC defendants' cross-claims. *See Cappuccitti*, 222 S.W.3d at 480 (when evaluating whether personal jurisdiction was warranted over entire proceeding, "if personal jurisdiction exists over [defendant] with respect to *any* claim alleged by [plaintiff], we will hold that the trial court properly denied [defendant]'s special appearance"). Under this analysis, the plaintiffs' claims and the ABC defendants' cross-claims will rise and fall together based on the evidence in the record. *See id.*; *see also* Tex. R. Civ. P. 120a(3) ("The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony.").

## B. Contacts of separate entities

We next address appellants' argument that they must be treated as separate entities for purposes of personal jurisdiction, and that the contacts of appellants or MCISS may not be imputed to another entity simply because the entities fall under the same corporate umbrella. "Texas law presumes that two separate corporations are distinct entities." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 173 (Tex. 2007). To prove otherwise, there must be something beyond the

subsidiary's "mere presence within the bosom of the corporate family." *Id.* at 176. Specifically, the plaintiff bears a heavy burden to demonstrate that imputing the contacts of a related entity, also known as "jurisdictional veil-piercing," is proper:

> To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice.

*BMC Software*, 83 S.W.3d at 799 (citations omitted); *see PHC-Minden*, 235 S.W.3d at 174–75. Here, evidence was presented in the trial court that, while MCI, MCIL, and MCISS are each a part of the same larger corporation, each is a separate entity. Appellees have not attempted to prove that MCI, MCIL, and MCISS are so "fused" that they "cease to be separate." *See BMC Software*, 83 S.W.3d at 799. Accordingly, we conclude jurisdictional veil-piercing is not appropriate in this case, and will consider each entity's contacts separately.

As discussed further below, however, we note that plaintiffs presented evidence that MCI contracted with MCISS to provide sales and repair services in Texas. We may consider MCI's use of MCISS as an intermediary to conduct business in Texas when evaluating MCI's contacts with Texas. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010) ("We hold that a manufacturer is subject to specific personal jurisdiction in Texas when it intentionally targets Texas as the marketplace for its products, and that using a distributor-intermediary for that purpose provides no haven from the jurisdiction of a Texas court.").

## C. MCI

In consolidated issue 1, MCI argues the trial court erred by determining it had personal jurisdiction over MCI. MCI does not assert in its opening brief that

plaintiffs did not make sufficient allegations supporting personal jurisdiction in their petitions. Accordingly, we first consider whether MCI has negated allegations that it established sufficient minimum contacts with Texas to support the exercise of personal jurisdiction. *See International Shoe*, 326 U.S. at 316; *Kelly*, 301 S.W.3d at 658.

In its special appearance, MCI presented the affidavit of Timothy J. Nalepka, the vice president and general counsel of MCI and other related entities. According to Nalepka, MCI is incorporated in Delaware and its principal place of business is in Des Plaines, Illinois. MCI does not have any employees or maintain any files in Texas. The bus at issue in this litigation was not designed or manufactured in Texas, and MCI "did not sell and has no record of servicing in Texas" the bus at issue.

MCI's evidence indicates that MCI does not have sufficient contacts with Texas to support the exercise of personal jurisdiction. *See Kelly*, 301 S.W.3d at 659 ("Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations."). Accordingly, the burden shifts to appellees to prove the "requisite link" with Texas. *Id.* at 660.

We begin with specific jurisdiction. In their response to MCI's special appearance, plaintiffs presented discovery responses showing that MCI purchased the bus in question on an intercompany basis from MCIL, the manufacturer of the bus, for MCI to resell to an end-user. MCI then sold the new bus to a non-party in New Jersey. Plaintiffs further presented evidence that MCI had a longstanding agreement, dating back to 1996 and continuing at least through September 2017, with MCISS (and a predecessor entity to MCISS) to sell and repair MCI buses in Texas, specifically at a facility located in Dallas. Plaintiffs further produced evidence that MCI sent service bulletins to more than 151 Texas customers in the

11

seven years before the accident in question. Sample bulletins produced by plaintiffs dated within the seven-year period discuss malfunctioning parcel racks and overheating batteries in MCI buses, and include recommendations for resolving those issues. Plaintiffs also produced evidence that 117 Texas customers received warranty payments from MCI in the seven years before the accident at issue here, totaling more than $1.3 million.

Plaintiffs argue this evidence is sufficient to show that personal jurisdiction is proper under the "stream-of-commerce-plus" theory employed in Texas courts. Under the supreme court's stream-of-commerce-plus precedent, specific jurisdiction exists if the defendant places goods into the stream of commerce "with the expectation that they will be purchased by consumers in the forum state." *Moki Mac*, 221 S.W.3d at 577 (citing *World-Wide Volkswagen*, 444 U.S. at 297–98). "The exercise of jurisdiction is permitted, however, only when the defendant targets the forum, not when the defendant merely foresees his product ending up there." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 13 (Tex. 2021). Accordingly, under the stream-of-commerce-plus theory, proof of some "additional conduct," such as advertising in the forum state or marketing the product through a distributor in the forum state, is required in addition to evidence that the defendant placed the product in the stream of commerce. *See Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987); *Moki Mac*, 221 S.W.3d at 577.

Here, the evidence shows that MCI placed the bus involved in the accident in the stream of commerce by purchasing the new bus on an intercompany basis from MCIL and then selling the bus in New Jersey. In addition, plaintiffs presented evidence that MCI contracted to have its buses sold and serviced at the MCISS facility in Dallas beginning in 1996 and continuing at least through 2017, the year

12

of the accident at issue. MCI further sent service bulletins addressing safety issues to more than 150 Texas customers in the seven years before the accident in this litigation, and during the same period paid more than $1.3 million in warranty payments to 117 Texas customers. This Texas-based activity constitutes sufficient "additional conduct" under the stream-of-commerce-plus theory to support personal jurisdiction over MCI. *See Asahi*, 480 U.S. at 112; *Luciano*, 625 S.W.3d at 14 ("Placing its product into the stream of commerce in conjunction with its 'additional conduct' of soliciting business and distributing its product in Texas is sufficient to hold that [defendant] purposefully availed itself of the Texas market.").

We next consider whether MCI's Texas contacts are sufficiently related to the bus accident at issue. As above, specific jurisdiction is established when the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Helicopteros Nacionales*, 466 U.S. at 414 & n.8. As the Supreme Court recently clarified, "[n]one of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (quotation omitted). Instead, "our most common formulation of the rule demands that the suit arise out of *or relate to* the defendant's contacts with the forum." *Id.*

Plaintiffs claim their injuries arose from defects in the bus, asserting claims of products liability, breach of warranty, and negligence. The evidence shows MCI placed the bus in the stream of commerce and that the bus was purchased by a Texas company, Francisco Tours, and used to transport individuals, including Texas residents, between Texas and Mexico. Although the accident itself occurred in Mexico, not Texas, this is not dispositive. *See, e.g.*, *Cessna Aircraft Co. v.*

*Garcia*, No. 13-17-00259-CV, 2018 WL 6627602, at *1, *4 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2018, pet. denied) (mem. op.) (specific jurisdiction proper in Texas over airplane manufacturer although accident in question occurred in Mexico).[4] The question is not where the accident occurred; the question is whether MCI's contacts with Texas are sufficiently related to the accident to support specific jurisdiction. The facts that MCI facilitates bus repairs in Texas, sends product bulletins with bus-safety information to Texas customers, and sends warranty payments to Texas customers compel the conclusion that MCI's contacts with Texas are sufficiently related to the operative facts in this litigation, which center on an accident involving an MCI bus that was purchased by a Texas company and used by that company in Texas to transport Texans. *See Ford Motor Co.*, 141 S. Ct. at 1026 (suit must arise from "*or relate to* the defendant's contacts with the forum").

Finally, we consider whether the exercise of personal jurisdiction over MCI comports with traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316. Once the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Burger King,* 471 U.S. 477–78; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C*., 815 S.W.2d 223, 231 (Tex. 1991). In making this determination we consider the following factors, when appropriate:

---

[4] *See also Dillard v. Fed. Corp.*, 321 F. Supp. 3d 752, 760 (W.D. Tex. 2018) ("[Defendant] argues that, because the accident in question occurred not in Texas, but in Mexico, the plaintiffs' cause of action does not arise out of [defendant]'s Texas contacts. Not so. It is well established that the unilateral act of a consumer/plaintiff bringing a good into a state cannot satisfy the requirement of contact with the forum State. But that same act of taking a good to another state does not nullify the purposeful contacts a defendant has with a previous state.").

(1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Guardian Royal Exch.*, 815 S.W.2d at 232. "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil Int'l. Inc., v. OAO Gazprom*, 414 S.W.3d 142, 154–55 (Tex. 2013).

In arguing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice, MCI highlights evidence that it does not maintain offices, employees, or files in Texas, and its sole testifying witness to this point lives and works in Illinois. To the extent MCI argues this evidence shows it would be unduly burdensome for it to litigate in Texas due to witnesses and documents being out of state, "the same can be said of all nonresidents," and "[d]istance alone cannot ordinarily defeat jurisdiction." *Id.* at 155; *see Guardian Royal Exch.*, 815 S.W.2d at 231 (noting that "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity"). MCI may be burdened by having to defend itself in litigation, but MCI has not demonstrated that this burden is an unreasonable one. *See Hoagland v. Butcher*, 474 S.W.3d 802, 816 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

MCI also argues that the State of Texas has "minimal interest" in this dispute, given that the accident happened outside of Texas. Multiple plaintiffs, however, allege without dispute that they are Texas residents. Texas "has an obvious interest in providing a forum for resolving disputes involving its citizens." *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex. App.—

Houston [14th Dist.] 2002, pet. dism'd w.o.j.); *see also Moncrief Oil*, 414 S.W.3d at 155. Ultimately, we conclude this is not one of the rare cases in which exercising jurisdiction does not comport with fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154–55.

We overrule consolidated issue 1 as to MCI.

## D. MCIL

MCIL also filed special appearances to plaintiffs' claims and the ABC defendants' cross-claims. Like MCI, MCIL also argues the trial court erred by denying its special appearances. MCIL does not argue that plaintiffs did not meet their burden to assert allegations supporting personal jurisdiction, so we turn to MCIL's evidence to the contrary. MCIL also presented an affidavit from Nalepka, which identified him as the vice president, general counsel, and secretary of MCIL and other related entities. In the affidavit, Nalepka states that MCIL "is a Federal Canadian corporation that has its principal place of business in Winnipeg, Manitoba, Canada." According to Nalepka, MCIL conducted numerous activities in Canada: designing, manufacturing, and selling new motor coaches, selling and leasing used motor coaches, manufacturing aftermarket parts, and servicing and repairing coaches. It also designed and manufactured motor coaches that it then sold to MCI for the purpose of MCI selling those motor coaches in the United States.

Nalepka affidavit also discusses activities that MCIL does *not* conduct in Texas. According to Nalepka, MCIL does not maintain any place of business in Texas and does not have any employees in Texas. MCIL is not authorized to do business in Texas and does not have a registered agent for service of process in Texas. MCIL does not design, manufacture, market, or sell motor coaches in Texas.

This evidence is sufficient to negate either specific or general personal jurisdiction in Texas. *See Kelly*, 301 S.W.3d at 659. We turn, then, to whether plaintiffs responded with evidence "establishing the requisite link with Texas." *Id.* at 660.

As to specific jurisdiction, Plaintiffs presented MCIL's admissions that it designed and manufactured the bus at issue and placed the bus into the stream of commerce. Plaintiffs argue this evidence is sufficient to support specific jurisdiction under a stream-of-commerce theory. As above, however, under the stream-of-commerce-plus theory used in Texas, proof of some "additional conduct," such as advertising in the forum state or marketing the product through a distributor in the forum state, is required in addition to evidence that the defendant placed the product in the stream of commerce. *See Asahi*, 480 U.S. at 112; *Moki Mac*, 221 S.W.3d at 577. We encounter no evidence of "additional conduct" by MCIL in the record before us, nor any agreement with another entity to perform additional conduct such as selling, repairing, or marketing MCIL buses in Texas. *See Spir Star AG*, 310 S.W.3d at 871. We conclude the evidence is insufficient to support specific personal jurisdiction.

As to general jurisdiction, plaintiffs concede on appeal that the evidence is insufficient to support general jurisdiction. We agree. The uncontested evidence shows that MCIL is incorporated, and has its principal place of business, outside of Texas. Under such circumstances, only exceptionally substantial contacts will support general jurisdiction in Texas, which we agree are not present here. *See Daimler*, 571 U.S. at 127 (general jurisdiction inquiry is whether foreign corporation's affiliations with forum state are so "continuous and systematic" as to render corporation "essentially at home" in forum state); *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (courts ordinarily do not have general jurisdiction

17

over corporate defendants that are not incorporated in forum state and do not have their principal place of business there).

We sustain consolidated issue 1 as to MCIL.

## IV.   CONCLUSION

Having sustained appellants' consolidated issue 1 as to MCIL, we reverse the trial court's order to the extent it denies MCIL's special appearances and render judgment dismissing plaintiffs' claims and the ABC defendants' cross-claims against MCIL with prejudice for want of personal jurisdiction. Tex. R. App. P. 43.2(c). Having overruled the remainder of consolidated issue 1, we otherwise affirm the trial court's order.[5]


/s/    Charles A. Spain
        Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Spain.

---

[5] Because this is an interlocutory appeal of the trial-court's order denying appellants' special appearances, only that order is before this court—not the entire trial-court case. We do not remand the case to the trial court because the case is not before us. *Chappell Hill Sausage Co. v. Durrenberger*, No. 14-19-00897-CV, 2021 WL 2656585, at *5 n.6 (Tex. App.—Houston [14th Dist.] June 29, 2021, no pet.) (mem. op.).

18